**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-1068-WJM-NRN

JOHN DOE, individually; and
RICHARD ROE, individually,

    Plaintiffs,

v.

COLORADO COMMUNITY COLLEGE SYSTEM *et al.,*

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

---

This breach of contract dispute is before the Court on Defendants' Motion to Dismiss Second Amended Complaint ("Motion"). (ECF No. 75.) Plaintiffs responded in opposition (ECF No. 84), and Defendants replied (ECF No. 87). For the following reasons, the Motion is granted.

## I. BACKGROUND AND PROCEDURAL HISTORY

On May 4, 2018, John Doe and Richard Roe ("Plaintiffs") sued the Colorado Community College System ("System") and Trinidad State Junior College ("School") (jointly, "Institutional Defendants"), as well as various individuals associated with those institutions in their individual and official capacities (jointly, "Individual Defendants"), for expelling Plaintiffs from the School.[1] (ECF No. 1.) The disciplinary decision was based on Plaintiffs' violations of the School's sexual misconduct policies after Plaintiffs

---

[1] In this Order, the Court refers to all of the defendants collectively as "Defendants."

allegedly engaged in non-consensual conduct with a female student. (ECF No. 75 at 1.) In an Amended Complaint, Plaintiffs brought claims against Defendants for violating their due process rights in contravention of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), as well as claims against the Individual Defendants in their individual capacities for race-based discrimination under 42 U.S.C. § 1981, and sex-based discrimination in violation of the Fourteenth Amendment under 42 U.S.C. § 1983. (ECF No. 26 ¶¶ 190–238.) Plaintiffs also sought declaratory judgment and injunctive relief against Defendants. (*Id.* ¶¶ 238–49.)

Defendants previously moved to dismiss all claims against them in the Amended Complaint with prejudice. (ECF No. 31.) The Court previously dismissed the Title IX and § 1983 claims with prejudice because they were barred by the statute of limitations. (ECF No. 58 at 11.) In that same Order, the Court also dismissed without prejudice the § 1981 claim because Plaintiffs had failed to develop any argument that the Individual Defendants violated a clearly established right, and therefore, on the record before the Court, the Individual Defendants were entitled to qualified immunity. (*Id.* at 15.) However, in the interest of justice, the Court allowed Plaintiffs to file a Second Amended Complaint ("SAC"), which they did on October 17, 2019. (ECF No. 70.)

In the SAC, Plaintiffs bring claims for race-based discrimination pursuant to 42 U.S.C. § 1981 brought through 42 U.S.C. § 1983 against Defendants (*id.* ¶¶ 193–221), and for declaratory and injunctive relief against Defendants (*id.* ¶¶ 222–33). Defendants have again moved to dismiss all claims against them with prejudice. (ECF No. 75.)

## II.  LEGAL STANDARDS

**A.     Federal Rule of Civil Procedure 12(b)(1)**

As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  See U.S. Const. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts must be construed strictly.  See *F&S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  A party challenging the Court's jurisdiction may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  See *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  *See id.*  A court has wide discretion to allow affidavits, other documents, and may conduct a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  *See id.*

**B.     Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  A "court's function on a Rule

12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Thus, in ruling on a motion to dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint.").

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v.*

*Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

**A.     Claims against the Institutional Defendants**

Defendants argue the Institutional Defendants are entitled to Eleventh Amendment immunity as to both claims.  (ECF No. 75 at 5.)

"If applicable, the Eleventh Amendment bars suits against states in federal court."  *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1231–32 (10th Cir. 1999) (citation omitted).  Only a state or an arm of a state may assert the Eleventh Amendment as a defense to suit.  *Id*. at 1232 (citation omitted).  If the Institutional Defendants are arms of the State of Colorado, then there is no question that the Eleventh Amendment shields them from liability under §§ 1981 and 1983.  *See LaFavre v. Kansas ex rel. Stovall,* 6 F. App'x 799, 805 (10th Cir. 2001) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1989) ("It is well settled that neither 42 U.S.C. § 1981 nor § 1983 abrogate the Eleventh Amendment immunity of the states. . . . Thus, Congress has not abrogated the defendants' Eleventh Amendment immunity under these provisions.")).

In the SAC, Plaintiffs allege that the System is "an educational subdivision of the State of Colorado" and the School is "a subdivision of the [System]."  (ECF No. 70 ¶¶ 3, 5.)  In their response, Plaintiffs do not address Defendants' argument that the

Institutional Defendants are "arms of the state" and therefore entitled to Eleventh Amendment immunity, apparently conceding this point. (*See* ECF No. 84; ECF No. 87 at 2.)

Plaintiffs have failed to show that their claims against the Institutional Defendants are not barred by Eleventh Amendment immunity. *See Sturdevant v. Paulsen*, 218 F.3d 1160, 1170–71 (10th Cir. 2000) ("We have consistently held that state colleges and universities are arms of the state . . . . Sturdevant has identified no significant respect in which the relationship of the community colleges to the State of Colorado differs from the relationships of the universities in the above cases to their respective states . . . .") The Court thus grants the Motion with respect to these claims, and dismisses Plaintiffs' § 1981 and declaratory and injunctive relief claims against the Institutional Defendants with prejudice.

**B.    Claims against the Individual Defendants**

1.    Section 1981 - Official Capacities

Defendants argue that the Individual Defendants are also entitled to Eleventh Amendment immunity as to the § 1981 claim against them in their official capacities. (ECF No. 75 at 5.)

A state official sued in his "official capacity" is generally entitled to assert the same immunities as the governmental entity for which he works. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). The exception to immunity announced in *Ex Parte Young*, 209 U.S. 123, 156 (1908), only allows a claim for prospective injunctive relief against a state official in his

official capacity.  *Id.*

In their response, Plaintiffs do not contest that the Individual Defendants are entitled to Eleventh Amendment immunity as to the § 1981 claim against them in their official capacities, apparently conceding this defense as well.  (*See* ECF No. 84; ECF No. 87 at 2 n.1.)

Plaintiffs have failed to show that their § 1981 claim against the Individual Defendants in their official capacities is not barred by Eleventh Amendment immunity. The Court thus grants the Motion with respect to this claim, and dismisses Plaintiffs' § 1981 claim against the Individual Defendants in their official capacities with prejudice.

2. <u>Declaratory and Injunctive Relief - Individual Capacities</u>

Defendants argue that Plaintiffs cannot obtain injunctive relief against the Individual Defendants in their individual capacities.  (ECF No. 75 at 6 n.3.)

The Tenth Circuit has cited with approval Seventh Circuit case law observing that "[I]njunctive relief against a state official may be recovered only in an official capacity suit."  *See Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1135 n.8 (10th Cir. 2001) (citing *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991)); *see also Smith v. Plati*, 56 F. Supp. 2d 1195, 1203 (D. Colo. 1999) (dismissing claims against state official in his individual capacity because the relief plaintiff requested could only be obtained against the defendant in his official capacity).

In their response, Plaintiffs do not directly address this argument and instead appear only to address arguments related to their claims for injunctive relief against the Individual Defendants in their official capacities.  (*See* ECF No. 84.)  Specifically, they

7

argue that their "[SAC] brings [a] claim for injunctive relief against [the Individual Defendants] in their *official capacities*" (*id.* at 2 (emphasis added)), and assert in the Conclusion that their "[SAC] adequately pleads claims for prospective, injunctive relief against the individual defendants in their *official capacities*" (*id.* at 12 (emphasis added)).

Plaintiffs fail to refute Defendants' argument that their claim for injunctive relief against the Individual Defendants in their individual capacities does not pass muster. The Court thus also grants the Motion with respect to this claim, and dismisses Plaintiffs' declaratory and injunctive relief claim against Individual Defendants in their individual capacities with prejudice.

3. <u>Section 1981 - Individual Capacities</u>[2]

The Court turns to Plaintiffs' § 1981 claim against the Individual Defendants in their individual capacities—the claim on which this action hinges.

In the SAC, Plaintiffs allege:

> In her Police Report, [Ms. Poe][3] never claimed that she was forced to perform any sexual act. Rather, she wrote, "I was scared because they were talking Spanish and laughing a lot of the time, and I didn't know what they were saying." In42

---

[2] Plaintiffs argue that the fact that the Court permitted them to proceed with the SAC is evidence that they have adequately pled their § 1981 claim against the Individual Defendants in their individual capacities. (ECF No. 84 at 5–6.) They are incorrect. The undersigned stated in the Order Granting Leave to Amend that "The Court's ruling today finds only that the proposed second amended complaint may remedy the issues identified in Order on the Motion to Dismiss. Today's ruling does not prejudge the specific issues raised by Defendants in their response opposing the Motion, or preclude Defendants from filing a motion to dismiss based on the issues raised." (ECF No. 69 at 4–5.) Thus, to the extent Plaintiffs rely on the mere fact that the Court permitted them to file the SAC as evidence that they have adequately pled a § 1981 claim, their argument is unavailing.

[3] Ms. Poe is the female student with whom Plaintiffs had sex. (ECF No. 70 ¶ 22.)

> U.S.C. §§ 2000e et seq., other words, her sole basis for
> being "scared" was that the Plaintiffs were speaking Spanish.
> Both Plaintiffs are of Latino descent. The College had the
> Police Report prior to completing its own Title IX Report and
> prior to expelling the Plaintiffs, and the College knew that
> Plaintiffs are of Latino descent.

(ECF No. 70 ¶ 104.) Plaintiffs allege that Defendants performed a "sham investigation pursuant to their Title IX roles" and "expelled Plaintiffs specifically because of their racial backgrounds." (*Id.* ¶ 203.) Defendants Martinez and Sacks, both deans and Title IX investigators with the System and School, allegedly intentionally discriminated against Plaintiffs on the basis of race by accepting Ms. Poe's racially discriminatory accusations. (*Id.* ¶¶ 7, 8, 209.) In connection with their decision to expel Plaintiffs, Defendants allegedly

> . . . heavily relied on the accuser's assertion that she was
> frightened of Plaintiffs because they spoke Spanish while
> engaged in a sexual act with the accuser. The accuser
> admitted that this was the only reason she was frightened of
> the Plaintiffs. By relying heavily on the accuser's racially
> based fear, the Defendants' actions against the Plaintiffs
> were racially motivated and discriminatory.

(*Id.* ¶ 204.) Plaintiffs allege that "Defendants' reliance on the racially discriminatory accusations of accuser [*sic*] demonstrates their intentional race discrimination under a cat's paw theory." (*Id.* ¶ 205.) Defendants' investigation of the incident was allegedly inadequate, and the "paucity of evidence" supporting the decision to expel Plaintiffs "demonstrates that the non-discriminatory reasons offered by Defendants to support expulsion of plaintiffs are pretext for intentional race discrimination." (*Id.* ¶ 207.) Allegedly, "[g]iven how the evidence in this matter overwhelmingly supported a conclusion that the Plaintiffs did not engage in any wrongful conduct against the

9

accuser, the Defendants did not have a nondiscriminatory reason for expelling the Plaintiffs and denying them of [*sic*] education, housing, and food." (*Id.* ¶ 206.) Plaintiffs allege

> [o]n information and belief, students of Caucasian backgrounds in positions similar to that of Plaintiffs in Title IX investigations at the School and System have been treated differently by the School and System. Caucasian students in Title IX investigations have been subject to dissimilar, less-severe punishments, pains, penalties, and sanctions.

(*Id.* ¶ 208.)

In their Motion, Defendants argue that Plaintiffs' § 1981 claim fails as a matter of law because they do not—and cannot—allege any nexus between Plaintiffs' race or national origin and Defendants' conduct. (ECF No. 75 at 6–7; ECF No. 87 at 3–5.) In other words, they argue that Plaintiffs have failed to allege sufficient facts to support intentional discrimination, which they must do to allege a viable § 1981 claim. (ECF No. 75 at 7.) Defendants contend Ms. Poe's allegedly racially discriminatory statement does not demonstrate racial bias. (ECF No. 87 at 4.) Rather, her statement to the police that she was scared during the alleged assault "at most, focuses on her own inability to understand Spanish, not Plaintiffs' ethnicity." (*Id.*) To imply that Ms. Poe's statement reflects "racial animus" does not draw "'all reasonable inferences' from the facts stated," but instead is "an exercise in conjecture about her state of mind and motivations, which will not meet Plaintiffs' burden." (*Id.* at 4–5.)

In addition, Defendants argue that the fact that Defendants Robert Martinez and Casey Sacks included Ms. Poe's statement from the police report in their Title IX report does not support Plaintiffs' conclusion that Martinez and Sacks engaged in intentional

discrimination. (ECF No. 75 at 12.) Even assuming the statement reflects racial animus, Defendants argue Plaintiffs fail to plausibly allege how the statement informed the investigation and caused Martinez and Sacks to intentionally discriminate against Plaintiffs because of their race, or why, based on a "cat's paw theory." (*Id.*) Instead, Defendants argue that Plaintiffs merely impute Ms. Poe's alleged racial bias to Martinez and Sacks and further impute her bias and infer racial discrimination by all of the Individual Defendants. (*Id.*)

In response, Plaintiffs argue they have pled sufficient factual allegations supporting intentional discrimination for the SAC to survive Rule 12(b)(6) scrutiny. They argue that they pled "both Plaintiffs are of Latino descent" and that Ms. Poe's sole basis for being scared during the alleged assault was that Plaintiffs spoke Spanish. (ECF No. 84 at 6.) Relying on a "cat's paw theory" to demonstrate discriminatory intent, Plaintiffs contend that Defendants knew of Ms. Poe's bias and adopted that racial animus when they relied on it in their investigation and decision to expel Plaintiffs. (*Id.* at 7 (citing ECF No. 70 ¶¶ 104, 204–17), 9.)

Viewed in the context of Plaintiffs' other allegations that the Title IX investigation was "woefully inadequate and did not support its ultimate conclusion of wrongdoing," Plaintiffs assert that the Court should reasonably infer that Defendants intentionally discriminated against them on the basis of race. (*Id.* (citing ECF No. 70 ¶¶ 30, 33, 42, 56, 69, 74, 116, 119, 137, 164).) Plaintiffs state that they raise the issue of the deficiencies of the Title IX investigation not as a basis for their claims but as evidence that any race-neutral reasons for Plaintiffs' expulsions are mere pretext. (*Id.* at 10.)

Section 1981 prohibits racial discrimination in "the making, performance,

11

modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a), (b). To establish a *prima facie* case of discrimination under § 1981, a plaintiff must show: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101–02 (10th Cir. 2001). A plaintiff must demonstrate that the defendant "intentionally or purposefully discriminated" against him. *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1532 (10th Cir. 1995). "Where a decision-maker acts in accordance with a harasser's decision without herself evaluating the plaintiff's situation, *i.e.*, a cat's paw theory, a plaintiff may establish the decision-maker acted with discriminatory intent." *Sirpal v. Univ. of Miami*, 684 F. Supp. 2d 1349, 1357–58 (S.D. Fla. 2010) (citing *Llampallas v. Mini-Circuits, Lab, Inc.*, 162 F.3d 1236, 1248–49 (11th Cir. 1998)).

The Court agrees with Defendants and finds Plaintiffs have not alleged sufficient *facts* to show intentional discrimination. Plaintiffs ask the Court to make a series of inferences based on Ms. Poe's statement to the police, and conclude that the Individual Defendants intentionally discriminated against Plaintiffs in reaching the decision to expel them. (ECF No. 84 at 6–7, 10–11.) However, as Defendants emphasize, "the chasm is simply too great between the facts pled and the inference Plaintiffs ask this Court to make." (ECF No. 87 at 4.)

Significantly, Plaintiffs have misrepresented Ms. Poe's statement to the police. Plaintiffs allege that Ms. Poe wrote, "I was scared because they were talking Spanish

and laughing a lot of the time, and I didn't know what they were saying." (ECF No. 70 ¶ 104.) Plaintiffs then allege that "In other words, [Ms. Poe's] *sole basis* for being 'scared' was that the Plaintiffs were speaking Spanish." (*Id.*) (emphasis added). But Ms. Poe did not say Plaintiffs' race, ethnicity, or national origin was the source of her fear; her words do not evince "racial animus," as Plaintiffs ask the Court to infer. Under the circumstances—which involved an alleged sexual assault by Plaintiffs against Ms. Poe—it is unreasonable to conclude her "sole" source of fear was Plaintiffs' race and not her immediate physical peril; the allegation is merely a conclusion extrapolated by Plaintiffs to show racial bias and support their claim.

To credit Plaintiffs' suggested inference—that the sole basis for Ms. Poe's fear was the fact that Plaintiffs spoke Spanish—would require the Court to also logically infer that Ms. Poe would not have been scared if the assault had been perpetrated by English-speaking individuals. This is not a reasonable inference, nor one the Court is willing to make. Without the inference that Ms. Poe's statement demonstrated racial bias to underpin their claim, Plaintiffs' cat's paw theory of intentional discrimination against the Individual Defendants collapses. The mere alleged inadequacy of the Title IX investigation, without more, does not demonstrate intentional discrimination.

In addition, to the extent Plaintiffs rely on the allegation that Caucasian students under Title IX investigations by the Institutional Defendants are treated differently and subject to less severe punishments (ECF No. 70 ¶ 208) to support their claim of intentional discrimination, their argument is again unavailing. Defendants argue that "Plaintiffs do not identify any examples of similarly-situated Caucasian students that Defendants treated more favorably than Plaintiffs in the Title IX process, or state facts

that suggest such examples exist." (ECF No. 75 at 7.) Plaintiffs do not address Defendants' argument that the allegation is deficient in their response, nor do they allege any *facts* supporting the allegation, which is no more than a conclusory statement by counsel. (*See* ECF No. 84.) Thus, the Court finds this allegation does not support Plaintiffs' claim of intentional discrimination.

Because the Court finds Plaintiffs have failed to allege intentional discrimination, they have failed to state a claim for a violation of § 1981. The Court thus grants the Motion with respect to this claim, and dismisses Plaintiffs' § 1981 claim against the Individual Defendants in their individual capacities with prejudice.[4]

4. <u>Declaratory and Injunctive Relief - Official Capacities</u>

Because Plaintiffs' substantive § 1981 claims fail, their declaratory and injunctive relief claim against the Individual Defendants in their official capacities also fails. The Court thus grants the Motion with respect to this claim, and dismisses Plaintiffs' declaratory and injunctive relief claim against the Individual Defendants in their official capacities with prejudice. *See Abu-Fakher v. Bode*, 175 F. App'x 179, 181–82 (10th Cir. Mar. 16, 2006) (holding that a prisoner's entitlement to injunctive relief was reliant upon his ability "to state a claim for an Eighth Amendment violation").

**C.    Leave to Amend**

In their response, Plaintiffs request leave to amend the SAC to include a state

---

[4] Because the Court has already concluded that all of Plaintiffs' § 1981 claims against the Individual Defendants in their individual capacities should be dismissed under Rule 12(b)(6), there is no need for the Court to separately consider Defendants' contentions that Plaintiffs have failed to adequately plead the Individual Defendants' personal participation or that the Individual Defendants are entitled to qualified immunity.

official with the explicit authority to grant the requested prospective relief if the Court finds that claim deficient (ECF No. 84 at 5), though they do not generally request leave to amend the SAC in the event the Court finds Defendants' arguments for dismissal meritorious (*id.* at 11–12).  Regardless, the Court will consider whether amendment is warranted.

The Tenth Circuit has held that the Court "may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  A refusal to grant leave to amend is discretionary, and where "the denial rests on articulated reasons such as failure to cure deficiencies by previous amendments or futility of amendment, the district court's decision shall stand."  *TV Commc'ns Network v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992).

Plaintiffs were previously granted leave to further amend their Amended Complaint.  (ECF No. 69.)  Notwithstanding this second opportunity to cure the pleading deficiencies in that Amended Complaint, Plaintiffs have once again failed to allege facts that plausibly give rise to the claims they assert in this action.  In these circumstances, the Court finds that it would be inequitable to allow Plaintiffs yet another "bite at the apple," one that would require Defendants to yet again incur attorney's fees and costs in having to respond to a Third Amended Complaint.  *See Nat'l Ass'n of Inv'rs Corp. v. Bivio, Inc.*, 2013 WL 316021, at *8 (D. Colo. Jan. 28, 2013) (dismissing claims with prejudice under Rule 12(b)(6) where plaintiff was previously granted leave to amend its claims).  Because Plaintiffs have failed to state a claim for a violation of § 1981, the

Court will dismiss the SAC with prejudice under Rule 12(b)(6).

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss Second Amended Complaint (ECF No. 75) is GRANTED;

2. Plaintiffs' claims, and this action, are DISMISSED with prejudice;

3. The Clerk shall enter judgment in favor of Defendants and against Plaintiffs and shall terminate this case; and

4. Defendants shall have their costs, if any, upon compliance with D.C.COLO.LCIVR 54.1.

Dated this 4th day of September, 2020.

BY THE COURT:

_____
William J. Martínez
United States District Judge